UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M/A-COM TECHNOLOGY SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTEGRATED SEMICONDUCTOR SERVICE, INC., *et al.*, <br><br> Defendants. <br> _____/ | No. C-15-2423 EMC <br><br> **ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION TO MODIFY TEMPORARY RESTRAINING ORDER** <br><br> **(Docket No. 24)** |

Previously, the Court granted in part Plaintiff M/A-COM Technology Solutions, Inc.'s ("MACOM") motion for a temporary restraining order ("TRO") against Defendants Integrated Semiconductor Service, Inc. ("ISS") and Steven L. Collins. Currently pending before the Court is MACOM's ex parte motion to modify the TRO. To date, only Mr. Collins has made an appearance in this lawsuit. Mr. Collins opposes MACOM's motion.

Having reviewed the papers submitted, the Court hereby finds the matter suitable for disposition without oral argument. The motion is hereby **GRANTED**.

### I.   **FACTUAL & PROCEDURAL BACKGROUND**

The TRO currently in force provides as follows:

> Defendants Integrated Semiconductor Service, Inc. and Steven L. Collins (the "Defendants") and their agents, assigns or anybody acting on their behalf or in concert with them, are enjoined and restrained from withdrawing, transferring, or encumbering any funds in any bank account belonging to Defendants to the extent such action causes there to be less than $224,823.65 in available funds. All bank accounts belonging to or controlled by Defendants on which Integrated

> Semiconductor Service, Inc. and/or Steven L. Collins is a signatory or otherwise have withdrawal privileges are frozen in the amount of $224,823.65, and Defendants are prohibited from transferring, spending, encumbering, or otherwise disposing of the $224,823.65 belonging to MACOM.

Docket No. 19 (Order at 3). The TRO issued on June 5, 2015, and, on the same day, MACOM provided notice of the TRO to both ISS and Mr. Collins, including by e-mail and telephone. *See* Docket No. 20 (proof of service).

Subsequently, MACOM began to obtain discovery as to what happened with the $324,823.65 that it wired to ISS. The discovery obtained from ISS's bank, Bank of America, reflects as follows.

- On May 26, 2015 – approximately a week after MACOM wired the money – ISS/Mr. Collins withdrew $305,040 from the bank account holding the funds. *See* Holland Decl., Exs. 3-4 (Bank of America records).

- Also on May 26, 2015, ISS purchased four cashier's checks – all made payable to ISS – for the following amounts: $50,000; $40,000; $100,000; and $100,000. *See* Holland Decl., Ex. 4 (Bank of America records).

- On June 2, 2015, ISS purchased another cashier's check, this one in the amount of $100,000 and made payable to MACOM. *See* Holland Decl., Ex. 5 (Bank of America records). This is the $100,000 that was given to MACOM prior to issuance of the TRO. *See* Ex Parte App. at 6.

- On June 6, 2015 – a Saturday and the day after the TRO issued and Defendants were given notice thereof – ISS/Mr. Collins began the process of withdrawing $98,974 from the account where MACOM had wired the money.[1] The same day, ISS purchased more cashier's checks as follows: $50,000 made payable to MACOM; $10,000 made payable to Mr. Collins; $20,000 made payable to Mr. Collins; and $10,000 made payable to Mr. Collins. *See* Holland Decl., Ex. 6 (Bank of America records).

---

[1] Mr. Collins claims that, although MACOM gave notice of the TRO on June 5, 2015, *see* Docket No. 20 (proof of service), including by e-mail *and* telephone, he did not become "aware of the lawsuit and the Court's restraining order" until June 15, 2015. *See* Collins Decl. ¶ 7.

2

On June 19, 2015, MACOM took the deposition of Mr. Collins. During the deposition, Mr. Collins testified, *inter alia*, that:

- The last time ISS provided services to MACOM was in 2013 or early 2014. *See* Holland Decl., Ex. 1 (Collins Depo. at 81).
- MACOM owed ISS $185,000 for services provided but ISS never invoiced MACOM for these services. *See* Holland Decl., Ex. 1 (Collins Depo. at 110). Nor did ISS communicate to MACOM that it was owed the $185,000. *See* Holland Decl., Ex. 1 (Collins Depo. at 112).
- No documents currently exist which support ISS's claim for $185,000; ISS and/or Mr. Collins would have to generate those documents. *See* Holland Decl., Ex. 1 (Collins Depo. at 112).
- With respect to the cashier's checks that ISS purchased, at least some have been turned over to a third party, David Dunham, whom Mr. Collins characterizes as his "consultant" or "advisor."[2] *See* Holland Decl., Ex. 1 (Collins Depo. at 155-56).
- With respect to the money that ISS withdrew, bills were paid, including $15,000-$17,000 which was sent – in cash – to a person by the name of "Rocky" in China. *See* Holland Decl., Ex. 1 (Collins Depo. at 211-12).

Mr. Collins declined to answer whether he had or has been paying his attorney of record for his services. *See* Holland Decl., Ex. 1 (Collins Depo. at 15).

Based on the information obtained from Bank of America and Mr. Collins, MACOM filed the currently pending motion to modify the existing TRO. More specifically, MACOM proposed that the Court order as follows:

> Defendants Integrated Semiconductor Service, Inc. and Steven L. Collins, and non- parties David Dunham and Vernon C. Goins, and their agents, assigns or anybody acting on their behalf or in concert with them, are ordered to turnover any cashier's checks in their possession drawn on Bank of America, the proceeds of such checks, or any other cash, checks, money orders, or other instrument or proceeds there from that constitute all or part of the $224,823.65 that is the subject of this Court's June 5, 2015 order, into the custody of the clerk of this Court at 450 Golden Gate Avenue, San Francisco, CA 94012.

---

[2] Notice of the pending motion was given to Mr. Dunham. The Court did not receive any opposition from Mr. Dunham.

3

> Each party that receives notice of this order must comply immediately with its terms, and no later than 48 hours after receiving notice.
>
> Upon email delivery of this order to Collins' attorney, Vernon C. Goins, Collins must recover all the cashier's checks drawn on Bank of America, the proceeds of such checks, or any other cash, checks, money orders, or other instrument or proceeds there from that constitutes all or part of the $224,823.65 that is the subject of this Court's June 5, 2015 order, from Dunham or any other individual or entity that has possession of those instruments or cash. Collins must then deliver such instruments or cash to the clerk of this Court immediately, but no later than 48 hours after the time this order is sent to Collins' attorney, Vernon C. Goins, via electronic mail.

Docket No. 24-1 (proposed order).

Subsequently, Mr. Collins filed an opposition to the motion to modify, largely arguing that the motion was moot because he had since obtained possession of all of the June 2015 cashier's checks, as well as the $40,000 cashier's check from May 2015,[3] and turned over these checks to MACOM. *See* Collins Decl. ¶ 2; Holland Reply Decl., Ex. 2 (cashier's checks turned over to MACOM). According to Mr. Collins, as a result of this $130,000 delivery to MACOM, he has "no more cash, checks, money orders, or other instruments or proceeds belonging to Plaintiff." Collins Decl. ¶ 3. Mr. Collins also asserts that he has not paid Mr. Goins or his law firm "for [his] defense in this action." Collins Decl. ¶ 9.

In reply, MACOM argues that, even with the turn over of the cashier's checks, there is still $93,723.02 (out of the total $324,823.65) unaccounted for.[4] MACOM says that it cannot determine where the remaining money is located despite its best efforts, *see, e.g.*, Holland Reply Decl., Ex. 1 (Collins Depo. at 146) (testifying that, after the money was wired, he withdrew $80,000 in cash to pay bills, including but not limited to the $17,000 sent to Rocky in China), and thus still asks the Court to grant its motion to modify, but just for a lesser sum. MACOM contends: "If defendants Collins and ISS and associated third parties do not possess any of the $93,723.02, there should be no concern with the order." Reply at 2.

---

[3] Mr. Collins claims to have turned over the $50,000 cashier's check from May 2015, but this appears to be an error. MACOM has provided evidence showing that the May 2015 cashier's check that was turned over was the $40,000 one. *See* Holland Reply Decl., Ex. 2 (cashier's checks turned over).

[4] As a result of the TRO, ISS's bank account has been frozen but there is only $1,100.63 in that account. *See* Holland Decl., Ex. 2 (Bank of America records).

## II. **DISCUSSION**

"[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtain[ed] at the time of its issuance have changed, or new ones have since arisen." *Sys. Fed.'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961).

The Court agrees with MACOM that there has been a change in circumstances or that new circumstances have arisen since the issuance of the TRO. More specifically, since the issuance of the TRO, MACOM has obtained discovery which has shed light on what happened to the funds it wired to ISS. The discovery reflects, *inter alia*, that ISS has close to no funds left in its bank account where the money was wired and that Mr. Collins has taken steps to secrete a significant amount of that money and/or to spend it. Moreover, Mr. Collins's credibility has been put into question as a result of statements that he has made as a part of these proceedings. For example, Collins contends that he had no knowledge of the lawsuit or the TRO until June 15, 2015, but he provides no explanation as to why he did not see the e-mail or hear the voicemail sent by MACOM on June 5, 2015, regarding the issuance of the TRO. Moreover, before issuance of the TRO, the Court was in contact with Mr. Collins's now-counsel of record, and counsel indicated to the Court that he would inform Mr. Collins of the then-pending motion for a TRO.

Mr. Collins's credibility is questionable for additional reasons. For instance, Mr. Collins claimed in his deposition that he sent $17,000 *in cash* to a person *in China*. This claim, for obvious reasons, strains credulity. Mr. Collins also testified in his declaration that he has "no more cash, checks, money orders, or other instruments or proceeds belonging to Plaintiff," Collins Decl. ¶ 3, but notably this does not foreclose the possibility that there is another person (aside from Mr. Dunham) to whom Mr. Collins gave cash, checks, or other proceeds for safekeeping or ultimate return.

Given the above circumstances, the Court deems it appropriate to modify the TRO such that not only are funds frozen (per the original TRO) but that they must actually be turned over to the Court to ensure that there is no improper dissipation. The Court also agrees with MACOM's point that, "[i]f defendants Collins and ISS and associated third parties do not possess any of the $93,723.02, there should be no concern with the [modified] order." Reply at 2. Finally, the Court

notes that both the original and the expanded TRO are properly asserted against ISS as it has been given notice of all proceedings related thereto and has failed to make an appearance.[5]

Accordingly, the Court hereby orders as follows:

Defendants Integrated Semiconductor Service, Inc. and Steven L. Collins, and non-parties David Dunham and Vernon C. Goins, and their agents or anybody acting on their behalf or in concert with them, are ordered to turnover any cashier's checks in their possession, custody, or control drawn on Bank of America, the proceeds of such checks, or any other cash, checks, money orders, or other instrument or proceeds there from that constitute all or part of the $224,823.65 that is the subject of this Court's June 5, 2015 order, into the custody of the clerk of this Court at 450 Golden Gate Avenue, San Francisco, CA 94012. Each party that receives notice of this order must comply immediately with its terms, and no later than 48 hours after receiving notice.

This order disposes of Docket No. 24.

IT IS SO ORDERED.

Dated: July 2, 2015

_____
EDWARD M. CHEN
United States District Judge

---

[5] And at this point, there is little doubt that ISS has knowledge because Mr. Collins is its managing agent. *See generally* Docket No. 31 (Collins declaration).